IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**HELEN ANNETTE MARTIN**                                                                    **PLAINTIFF**

**v.**                                                       **CIVIL ACTION NO. 1:20-cv-259-JMV**

**COMMISSIONER OF**
**SOCIAL SECURITY**                                                       **DEFENDANT**

## ORDER

This matter is before the court on Plaintiff's complaint [1] for judicial review of the Commissioner of the Social Security Administration's denial of an application for supplemental security income. The undersigned held a hearing on February 2, 2022. [21] Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and that said decision should be affirmed.

### Standard of Review

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Statement of the Case**

The Plaintiff was born on September 29, 1971, and was a younger individual at all times since the application for Supplemental Security Income was filed. (TR 22). She earned a general education development (GED) certificate, the equivalent of a high school education, but has no past relevant work. (TR 22, 315, 321).

On April 18, 2019, Ms. Martin filed her application for SSI, alleging disability due to a variety of psychological conditions and pain in her neck and back. (TR 11, 294-99, 316, 320). The agency's claims representative who assisted Ms. Martin by telephone, perceived no difficulties with respect to understanding, coherency, concentrating, talking, or answering. (TR 317).

The Disability Determination Services (DDS) for the State of Mississippi referred Ms. Martin for a physical consultative examination, which was performed in July 2019, by F. Mitchell

2

Massey, M.D. (TR 468-72). The DDS, after reviewing Ms. Martin's file, including Dr. Massey's report, denied Ms. Martin's application for benefits initially on August 21, 2019, and upon reconsideration on September 13, 2019. (TR 197-217). Ms. Martin then requested a hearing before an ALJ, and said request was received on October 3, 2019. (TR 239-41).

Ms. Martin appeared and testified at a hearing before ALJ Roger Lott on July 7, 2020, and was represented by counsel who certified that the record was complete. (TR 143-72). The claimant's representative agreed to proceed with a telephone hearing and waived the 20-day notice of amended hearing. (TR 11). An impartial vocational expert, Barbara Holmes, also appeared and testified at the hearing. (TR 167-71). The ALJ considered the evidence and issued a decision on July 29, 2020, concluding that Ms. Martin was not disabled from April 18, 2019, through the date of the decision. (TR 11-23).

In his decision, the ALJ described his evaluation of the evidence under the familiar five-step sequential process. At Step 1, the ALJ found Ms. Martin did not engage in substantial gainful activity on or after April 18, 2019, the application date. (TR 13). At Step 2, the ALJ found Plaintiff to have the following severe impairments: bipolar disorder, post-traumatic stress disorder, anxiety disorder, panic disorder, cervical spine degenerative disc disease, and lumbar spine degenerative disc disease. (TR 13). The record indicates that the claimant also has Vitamin D deficiency, folate deficiency, menopausal disorder, and hyperlipidemia. (TR 13). However, the ALJ found those to be non-severe impairments. The ALJ determined at Step 3 that Ms. Martin's impairments were not presumptively disabling because they did not meet or medically equal the severity criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (TR 14-16).

Having proceeded through these first three steps, the ALJ then assessed Ms. Martin's RFC in order to evaluate her claim at Steps 4 and 5 of the sequential evaluation. *See* 20 C.F.R. §

416.920(e)-(g). The ALJ determined Ms. Martin was physically capable of performing a reduced range of simple, sedentary work. (TR 16). The ALJ did not conduct an analysis at Step 4 of the sequential evaluation because Ms. Martin had no past relevant work. (TR 22).

The ALJ looked at the medical evidence and found that the objective findings failed to provide strong support for the Claimant's allegations of disabling symptoms and limitations. (TR 17). The ALJ noted that "[a]fter careful consideration of the evidence . . . the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (TR 21). Ultimately, he found that the overall evidence indicated that while the claimant's condition restricts her ability to perform work-related activity, her condition does not preclude all work activity. (TR 21).

At Step 5, relying on the vocational expert's identification of representative occupations that an individual with Ms. Martin's vocational profile and RFC could perform, the ALJ determined Ms. Martin was not disabled because there were a significant number of sedentary, unskilled jobs in the national economy that she could perform. (TR 22-23, 167-69).

On November 4, 2020, the Appeals Council denied Ms. Martin's request for review of the ALJ's decision. (TR 1-5). Therefore, the ALJ's July 29, 2020, hearing decision stands as the Commissioner's final decision and is subject to judicial review pursuant to 42 U.S.C. § 405(g). *See id.*; 20 C.F.R. §§ 416.1400(a)(5), 416.1455(a).

## Discussion

The Plaintiff raises three issues, which will be addressed in turn below.

A)   Did the ALJ err by failing to evaluate all of the evidence of record fully and fairly?

Plaintiff alleges that the ALJ's RFC was not supported by substantial evidence and fails to consider time off task or away from the workstation that the Plaintiff would need when she has panic attacks that are consistently documented throughout the record. Plaintiff also alleges that the ALJ relied heavily on one office visit from June 24, 2019, which is "one isolated office visit where the Plaintiff shows improvement." [15] at 5. According to the Plaintiff, "more than a preponderance of the evidence supports a finding that this Plaintiff would be unable to maintain and sustain employment." However, this Court finds that Plaintiff's argument is unpersuasive.

In this case, the RFC the ALJ assessed to the Plaintiff was as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can lift, carry, push, or pull ten pounds occasionally and less than 10 pounds frequently; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; must avoid unprotected heights and hazardous moving machinery; can understand, remember, and carry out simple instructions and perform simple, routine tasks. She is able to attend and concentrate and persist on task for two-hour periods throughout an eight-hour day. She can have occasional interaction with supervisors, incidental contact with coworkers never working in close cooperation with the general public. She is able to adapt to simple, infrequent, and gradually introduced changes.

(TR 16). In support of the RFC, the ALJ noted that in making the finding, he had considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (TR 16). The ALJ dedicated multiple pages in his opinion in support of his RFC finding, including reference to the Claimant's testimony, where he found that she had described daily activities that are inconsistent with her allegations of disabling symptoms and limitations. (TR 17).

Next, the ALJ thoroughly analyzed the Plaintiff's medical history over the course of six pages in his opinion. (TR 16-21). He found that the RFC assessment "is supported by the claimant's activities of daily living and the objective medical evidence contained in the record."

5

(TR 21). While Plaintiff alleges that her medical evidence provides support for a "much more restrictive RFC," the RFC is an administrative assessment based on the totality of the evidence and extent to which a claimant's impairments and related symptoms affect her capacity to do work-related activities. 20 C.F.R. § 404.1545(a), 416.945(a). Affirming that the ALJ has the sole responsibility to determine RFC, the Fifth Circuit stated, "the ALJ properly interpret[s] the medical evidence to determine [a claimant's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).

Furthermore, the RFC is the most a claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). The RFC assessment is based on "all of the relevant medical and other evidence" (20 C.F.R. § 416.945(a)(3)), including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 SSR LEXIS 5, at *13-14. The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence. *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007), citing *Holman v. Massanari,* 275 F.3d 43 (5th Cir. 2001).

At her administrative hearing, Ms. Martin testified that she "cared for her pet cat, took medication, bathed, dressed, prepared simple meals, and watched television. The claimant denied any problems maintaining personal care including dressing, bathing, or grooming." (TR 17). The claimant noted that she could count change and handle financial accounts. (TR 17). She identified hobbies of watching television, reading, writing, taking photos, and surfing the internet. (TR 17).

As for her panic attacks, Plaintiff testified that they typically happened at night and occurred only occasionally ("maybe once a month") during the day. (TR 152-53, 163). Plaintiff also testified that she had crying spells "once a month" or "once every other month." (TR 155).

6

Importantly, the vocational expert testified that the occupations she identified would remain available for an individual missing one day of work each month. (TR 169-70).

Plaintiff also alleges that the ALJ failed to consider whether she could hold whatever job she finds for a significant period of time. Ms. Martin relies on *Leidler v. Sullivan*, 885 F.2d 291 (5th Cir. 1989) and *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986), which held that the Commissioner "must consider whether an applicant with a serious mental illness remains able to engage in substantial gainful activity when, although he is capable of performing work, he cannot maintain regular employment," and that the Commissioner "must determine whether the claimant can *hold* whatever job he finds for a significant period of time." *Leidler,* 885 F.2d at 293-94 (emphasis in original) (citing *Singletary,* 798 F.2d at 822). The Fifth Circuit, however, has clarified its position since these decisions:

> Absent evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of [RFC] we do not . . . require a specific finding that the claimant can maintain employment.

*Patterson v. Astrue*, 324 F. App'x 419, 422 (5th Cir. 2009) (*quoting Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (brackets omitted). "Only in *rare circumstances* is an ALJ required to make a separate determination regarding whether a claimant is able to maintain employment." *Weimer v. Astrue,* 284 F. App'x 129, 135 (5th Cir. 2008) (emphasis added).

In *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003), the Fifth Circuit rejected the claimant's *Singletary*-based assignment of error, explaining:

> Here, nothing in the record suggests that Frank can work only in short spurts. Even Frank herself does not contend that her situation resembles Singletary's: she does not allege that she can work for short spans of time, but cannot hold a job. Instead, she just seems to contend that she cannot work at all. We therefore do not see how the ALJ committed any error under *Singletary*.

7

> We suppose that Frank's *Singletary* argument is that the ALJ applied the wrong legal standard. Frank seems to argue that the ALJ must in every case articulate separate and distinct findings that the applicant can perform the incidents of a job *and* that he can maintain the job over a sustained period, even if the applicant does not contend that his situation resembles Singletary's. We reject this approach. *Singletary* simply interpreted "disability" under the Act to apply to cases in which a person could work for short periods, but could not hold a job. It did not require, as Frank seems to suggest, separate findings on "obtaining" and "maintaining" a job in every case, even in cases in which the applicant does not suggest that there is any difference between the issue of his ability to work and his ability to sustain work.

326 F.3d at 621.

Here, Ms. Martin contends that she cannot work at all. She does not contend that she can work for short spans of time; rather, she contends that she cannot hold a job. Therefore, Ms. Martin's ability to maintain employment is subsumed in the RFC finding and no separate finding as to the ability to maintain employment was required. *Id*. at 619-20. Thus, the Plaintiff's claim that the ALJ failed to evaluate all of the evidence of record fully and fairly is without merit.

B) Did the ALJ err by failing to order a Consultative Examination and thereby failing to adequately develop the record?

While it is accurate that an administrative law judge is charged with the responsibility of ensuring that the record is properly developed, and because of the Social Security Administration's duty to develop the medical record fully and fairly, it is reversible error for the administrative law judge not to order a consultative examination when such an evaluation is necessary to make an informed decision, *White v. Barnhart*, 373 F. Supp. 2d 1258 (N.D. Ala. 2005), it is equally accurate that normally, the securing of a consultative examination is in the discretion of the Administrative Law Judge as held in *Pierre v. Sullivan*, 884 F.2d 799 (5th Cir. 1989); 20 C.F.R. §§ 404.1519a (b) (OASDI), 416.9.

The Fifth Circuit has explained, "'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to

enable the [ALJ] to make the disability decision." *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (emphasis added). In *Brock v. Chater*, 84 F. 3d 726, 728 (5th Cir. 1996), the Court held that the ALJ has a duty to fully and fairly develop the administrative record in order to ensure an informed decision that is based on sufficient facts. However, in the same opinion, the Fifth Circuit clarified that to establish prejudice, a claimant must show that he "could and would have adduced evidence that might have altered the result." *Id.*

The ALJ detailed Plaintiff's relevant mental health treatment throughout his opinion (TR 17-21), and this Court finds that Plaintiff has failed to show that she could and would have adduced evidence that might have altered the result. Thus, this assignment of error is without merit.

C) Did the ALJ err by not incorporating all of Plaintiff's limitations into the hypothetical question posed to the Vocational Expert?

The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence. *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007), citing *Holman v. Massanari,* 275 F.3d 43 (5th Cir. 2001). The revised regulations clarify how evidence from Federal and State agency medical and psychological consultants—now deemed prior administrative medical finding(s) (except for the ultimate determination about disability)—is considered. They provide that, while ALJs are not required to adopt prior administrative medical findings, they must still consider this evidence in accordance with the Commissioner's regulations as appropriate, inasmuch as Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (2017) (citing §§ 404.1520b, 416.1520c, 416.1527, 416.920b, 416.920c, 416.927)

Here, there is no material difference between the ALJ's hypothetical question to the vocational expert and the ALJ's mental RFC assessment (TR 16, 168). When the State of Mississippi's DDS determined Ms. Martin was not disabled, it did so based in part on a review of

9

Ms. Martin's file and mental RFC finding by Jesse Dees, Ph.D. (TR 203-06). Dr. Dees made a function-by-function assessment of Ms. Martin's mental impairment and provided the following "additional explanation" for his findings:

> This claimant would be capable of understanding, remembering, and carrying out semi-complex instructions in order to perform WRTs for 2-hour blocks of time during an 8-hour day. The claimant would likely function best in a non-interpersonally intensive work environment. In that context, psychological factors would not significantly interfere with work performance and the claimant would be capable of relating appropriately to coworkers and supervisors. Moderate levels of supervision would be necessary to maintain work performance and to assist the claimant in adapting to change and in planning in the work context.

(TR 205). In his opinion, the ALJ noted that the limitations found by Dr. Dees are well supported and consistent with the record evidence as a whole. However, Ms. Martin claims that the ALJ's RFC finding is less restrictive than Dr. Dees' findings and lacks substantial evidence in the record.

In Plaintiff's brief, she maintains that the ALJ did not accommodate the limitation concerning "supervision" that Dr. Dees found was necessary (TR 205). However, this assignment of error is without merit. Dr. Dees found that the claimant could perform "semi-complex" work, whereas the ALJ's RFC limited Ms. Martin to "simple, routine tasks." (TR 16, 205). Therefore, the ALJ's RFC was, in fact, more restrictive than Dr. Dees' findings. This Court finds that based upon the evidence presented, the ALJ's RFC was supported by substantial evidence.

## Conclusion

For the reasons stated above, the undersigned finds that the Commissioner's decision should be and is hereby affirmed.

**SO ORDERED** this, the 2nd day of February, 2022.

/s/ Jane M. Virden
U.S. Magistrate Judge